IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-3053-WJM-NYW

AARON DUGAR,

    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS FOR CLEAR CREEK COUNTY, COLORADO,
SHERIFF RICK ALBERS, in his individual capacity, and
JOHN DOE SHERIFF'S OFFICERS 1–10, in their individual and official capacities,

    Defendants.

## ORDER GRANTING COUNTY DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on Defendants Board of County Commissioners for Clear Creek County, Colorado (the "County") and Sheriff Rick Albers's (jointly, "County Defendants") Motion to Dismiss ("Motion"). (ECF No. 20). For the following reasons, the Motion is granted.

### I. BACKGROUND[1]

This civil rights action arises out of an incident during Dugar's incarceration as a pretrial detainee at the Clear Creek Detention Facility ("CCDF"). (ECF No. 18.) Another detainee at CCDF, Demontrae Wilson, was housed in the same area, or "pod," as Dugar, along with approximately 18 to 20 additional inmates. (*Id.* ¶¶ 13, 16.) Wilson was detained on charges of attempted first degree murder. (*Id.* ¶ 19.)

---

[1] The following facts are taken from Plaintiff Aaron Dugar's Amended Complaint (ECF No. 18), which the Court assumes are true for the purpose of resolving the Motion. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

In June 2019, Wilson "violently attacked" Dugar without provocation, striking Dugar with his fists, stabbing him along his spinal cord, kicking him in the head, and strangling him in a chokehold. (*Id.* ¶ 24.) Two other inmates attempted to intervene in the altercation, and Doe Defendants ultimately entered the pod and apprehended Wilson. (*Id.*) The attack lasted approximately two minutes before Doe Defendants intervened. (*Id.* ¶ 25.) Dugar suffered fractures to his jaw and parts of his face, dismembered teeth, severe head trauma, and stab wounds. (*Id.* ¶ 32.)

Dugar initiated this action on October 12, 2020. (ECF No. 1.) He filed his Amended Complaint on December 29, 2020, which is the operative complaint. (ECF No. 18.) Dugar brings a total of three claims: (1) deliberate indifference in violation of the Eighth Amendment to the U.S. Constitution against the County and Albers; (2) deliberate indifference against Doe Defendants based on their failure to timely intervene to prevent the attack; and (3) violation of the Eighth Amendment against Doe Defendants based on their placement of Dugar in Wilson's vicinity.[2] (*Id.* ¶¶ 25–60.) Dugar brings all of his claims pursuant to 42 U.S.C. § 1983. (*Id.*)

County Defendants filed their Motion on January 12, 2021. (ECF No. 20.) Dugar responded on February 11, 2021, and County Defendants replied on February 23, 2021. (ECF Nos. 28 & 29.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The

---

[2] As Dugar was a pretrial detainee at the time of the incident (ECF No. 18 ¶ 11), his claims properly arise under the Fourteenth Amendment, though the analysis is identical to that of the Eighth Amendment. *See Barron v. Macy*, 268 F. App'x 800, 801 (10th Cir. 2008).

Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk*, 493 F.3d at 1177.  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III. ANALYSIS

**A.   Sheriff Albers**

   i.   *Official Capacity*

County Defendants assert that Dugar's official capacity claim against Albers should be dismissed as duplicative of his claim against the County.  (ECF No. 20 at 4.)  Specifically, any official capacity claim against a municipal employee is treated as a suit against the municipality itself.  *See Johnson v. Bd. of Cnty. Comm'rs for Cnty. of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996).  Dugar does not address this argument in his response.  (*See generally* ECF No. 28.)

The Court notes that the Amended Complaint asserts an individual capacity claim against Albers.  (ECF No. 18.)  As Dugar appears to suggest official capacity

liability by conflating the allegations against the County and Albers (*Id.* ¶¶ 35–44), and for the sake of thorough analysis, the Court will address official capacity liability.

As the County is a named defendant in this action, and Dugar offers no argument or authority supporting an additional official capacity claim against Albers, the Court concludes that the claim is redundant.  *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell* [*v. Department of Social Services of City of New York*, 436 U.S. 658 (1978)]. . . local government units can be sued directly for damages and injunctive or declaratory relief."); *see also French v. City of Cortez*, 361 F. Supp. 3d 1011, 1042 (D. Colo. 2019) (dismissing official capacity claims against individual officers as duplicative of claim against city).  Accordingly, to the extent Dugar asserts an official capacity claim against Albers, such claim is dismissed with prejudice.

  ii. *Individual Capacity*

County Defendants further contend that Dugar cannot state a claim against Albers because Dugar does not allege Albers's personal participation in any of the challenged conduct.  (ECF No. 20 at 3–4.)  Specifically, Dugar appears to assert claims for failure to protect, amounting to deliberate indifference in violation of the Fourteenth Amendment, based on his placement in the same housing unit as Wilson, and Doe Defendants' failure to timely respond to the attack.  (ECF No. 18 ¶¶ 36–44.)

Supervisor status alone is insufficient to establish liability without an affirmative link between the supervisor's conduct and a constitutional violation.  *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008).  Rather, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-

4

official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 683.

Dugar does not directly address supervisory liability in his response.[3] (*See generally* ECF No. 28.) Moreover, the Amended Complaint does not contain any allegations that Albers had any personal involvement in the incident; rather, Dugar alleges only that Albers was aware of policies which may have caused the incident. (ECF No. 18 ¶¶ 36–38.)

Finding that Dugar has not plausibly alleged facts giving rise to individual capacity supervisory liability of Albers—and that he arguably has conceded this claim given his complete failure to address it in his response—the individual capacity claim against Albers is dismissed without prejudice.

**B.      Municipal Liability: The County**

County Defendants argue that Dugar cannot state a claim against the County because he does not allege a particular custom or policy with specificity, a causal connection between the purported policy and his injuries, or a sufficiently culpable state of mind. (ECF No. 20 at 4–11.)

To state a claim against the County, Dugar must satisfy the municipal liability principles set forth in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). To sustain a *Monell* claim for deliberate indifference in violation of the

---

[3] While Dugar argues that Albers was a "final policymaker," such status relates to official capacity liability under *Monell* rather than individual capacity claims. *See Murphy v. City of Tulsa*, 950 F.3d 641, 644 (10th Cir. 2019) (stating that *Monell* liability may exist where a municipal employee with final policymaking authority ratifies an unconstitutional action); *see also Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (stating that "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation").

Fourteenth Amendment, a plaintiff must allege: (1) an official policy or custom, (2) that the policy or custom caused a constitutional injury, and (3) deliberate indifference to "an almost inevitable constitutional injury." *Schneider v. City of Grand Junction*, 717 F.3d 760, 769 (10th Cir. 2013).

Dugar contends that the County maintained an informal policy or custom of placing violent offenders with nonviolent offenders, and inadequately staffing the facility. (ECF No. 28 at 3–4.)  He further asserts that employing two officers to supervise a total of 120 inmates was insufficient and such understaffing provided too little time to intervene and prevent attacks.  (*Id.* at 4.)  Dugar concedes that he is unaware of any particular policy or custom, but "has a good faith basis to believe" that the County failed to supervise its employees based on the incident.  (*Id.* at 9.)  He speculates that he will be able to identify supporting facts when allowed to proceed with discovery.  (*Id.*)

Even assuming that Dugar plausibly alleged a specific policy or custom—which the Court is dubious that he has—he fails to satisfy the third element of a *Monell* claim, namely, that the County acted with deliberate indifference to an inevitable constitutional injury.

First, as to the contention that the County had a custom of understaffing such that officers could not intervene in under two minutes, Dugar argues that the fact that the attack occurred is sufficient to support his inadequate staffing claim.  (ECF No. 28 at 6.)  His only non-conclusory allegation in this vein is a single comment by an unnamed deputy two weeks prior to the incident, suggesting that the facility was understaffed. (ECF No. 18 ¶ 12.)  However, the Amended Complaint contains no factual allegations indicating that the County was aware that the staffing policy posed a threat to inmates.

6

(*See generally id.*)  As Dugar raises no facts as to the County's knowledge that its staffing policy created an obvious and unjustifiable safety risk, he fails to state a *Monell* claim based on such policy.  See *Schneider*, 717 F.3d at 769.

Second, Dugar similarly does not allege facts suggesting that the County was deliberately indifferent to the risk of placing detainees charged with violent offenses in the facility's broader population.  Specifically, he argues that the County's mere knowledge that Wilson was charged with attempted murder put the County on notice that he posed a threat to other inmates.  (ECF No. 28 at 11–12.)  But Dugar alleges no facts suggesting that such charges indicate that an inmate is necessarily a threat to other inmates.  He does not allege similar, prior events, nor facts beyond Wilson's criminal charges supporting Wilson's propensity to attack other inmates.  As such, he fails to plausibly allege the County's deliberate indifference to the threat of placing Wilson in the general detention population; Dugar therefore fails to satisfy the third prong as to this theory of his *Monell* claim.

Dugar does not allege facts supporting his contention that the County maintained a widespread custom or policy resulting in constitutional violations, nor that the County was deliberately indifferent to a substantial risk of harm, even if it did maintain such a policy.  Accordingly, Dugar's *Monell* claim fails, and Claim One against the County is dismissed without prejudice.

### C.     Doe Defendants

First, as the Doe Defendants are unnamed Sheriff's deputies (ECF No. 18 ¶ 10), the official capacity claims against them are duplicative of his claim against the County,

as discussed above with respect to Albers.  See *Johnson*, 85 F.3d at 493.  Accordingly, the official capacity claims against Doe Defendants are dismissed with prejudice.

Second, County Defendants argue that Dugar fails to allege unconstitutional conduct by Doe Defendants sufficient to support a claim of individual capacity liability.[4]  (ECF No. 28 at 4.)  They assert that Dugar fails to allege any unconstitutional act or omission by a particular officer.  (*Id.*)

A deliberate indifference claim must satisfy both an objective and subjective prong.  The objective prong requires the harm to be sufficiently serious as to implicate the Cruel and Unusual Punishment Clause of the Eighth Amendment, meaning that the condition "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006); *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).  The subjective component of the inquiry is met if an official "knows of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 837 (10th Cir. 1994).

The Court assumes without deciding that Dugar's injuries are severe enough to satisfy the objective component.  As to the subjective component, however, Dugar alleges only that Doe Defendants placed him in Wilson's vicinity and failed to intervene within two minutes of the attack.  (ECF No. 18 ¶¶ 46–49.)  His allegations that Doe

---

[4] To the extent County Defendants argue that the pleading of Doe Defendants is improper (ECF No. 28 at 4 n.4), they rely solely on a case in which the statute of limitations had expired prior to a plaintiff identifying or serving certain unnamed defendants; such factual scenario is distinct because County Defendants do not assert that Dugar must have identified and served Doe Defendants at this time.  See *Conyac v. Noonan*, 2013 WL 4434369, at *4 (D. Colo. Aug. 16, 2013).

Defendants should have known that he would be in danger are purely speculative, as he does not allege any facts supporting their knowledge of the risk Wilson posed beyond his charge for attempted murder.  (*See generally id.*)  Further, even assuming that a two-minute response time was unreasonable, Dugar does not allege that Doe Defendants intentionally or recklessly delayed their response; rather, he argues that understaffing caused the delay.  (ECF No. 28 at 12.)  The Court therefore finds that Dugar has not alleged Doe Defendants' knowledge and disregard of a substantial risk to his safety.

As Dugar cannot satisfy the subjective component of the deliberate indifference inquiry, his individual capacity claims against Doe Defendants must fail.  Claims Two and Three are therefore dismissed without prejudice as to Doe Defendants in their individual capacities.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. County Defendants' Motion (ECF No. 20) is GRANTED;

2. Dugar's claims against Albers and Doe Defendants in their official capacities are DISMISSED WITH PREJUDICE;

3. Dugar's claims against Albers and Doe Defendants in their individual capacities are DISMISSED WITHOUT PREJUDICE;

4. Dugar's Claim One against the County is DISMISSED WITHOUT PREJUDICE;

5. The Stay of Discovery (ECF No. 23) is LIFTED; and

6. Should Dugar believe himself in a position to plausibly plead facts which would cure the pleading deficiencies noted in this Order, he may file a motion seeking

leave to file an amended complaint reflecting the same not later than **October 15, 2021**.

Dated this 27th day of September, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge